# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

PATRICK McGAIL,

                Petitioner,           :    Case No. 3:17-cv-251

      - vs -                          District Judge Walter Herbert Rice
                                         Magistrate Judge Michael R. Merz

JEFFREY B. NOBLE, Warden,
  London Correctional Institution,
                                  :
                Respondent.

# REPORT AND RECOMMENDATIONS

This is an action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Petitioner Patrick McGail with the assistance of counsel seeks release from a sentence of twenty-four years to life imposed by the Miami County Common Pleas Court on his convictions for murder, aggravated burglary, and aggravated robbery (Petition, ECF No. 1, PageID 1).

The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b) and the Dayton General Order of Assignment and Reference (General Order Day 13-01). The relevant filings for consideration are the Petition (ECF No. 1), Petitioner's Memorandum in Support of the Petition (ECF No. 3), the State Court Record (ECF No. 11), the Return of Writ (ECF No. 12), and Petitioner's Response to the Return (ECF No. 15).

Petitioner pleads one ground for relief: McGail was deprived of his Sixth Amendment rights to an impartial jury and to confront evidence against him due to juror misconduct and the subsequent application of the *aliunde* rule (Petition, ECF No. 1, PageID 5).

**Procedural History**

This case arises from the armed home invasion of a drug dealer named Nathan Wintrow on October 30, 2013, involving McGail and two co-defendants.[1]  During the course of the invasion, Wintrow was shot and killed.  On December 20, 2013, the Miami County Grand Jury indicted McGail for his part in the invasion on two counts of murder and one count each of aggravated burglary and aggravated robbery.  Each count had an appended firearm specification.  McGail was convicted on all counts and specifications on August 14, 2014.

Two weeks after the verdict, McGail moved for a mistrial or an evidentiary hearing on juror misconduct, attaching the Affidavit of Juror Kylie Spiers (State Court Record, ECF No. 11, PageID 258 et seq.).  The trial court treated the motion as one for a new trial and denied it September 3, 2014.  *Id.* at PageID 269 et seq.  Two days later, McGail moved for reconsideration, challenging the constitutionality of Ohio R. Evid. 606(B).  *Id.* at PageID 274, et seq.  On September 16, 2014, the trial court denied that motion as well.  *Id.* at PageID 284, et seq.  Undeterred, McGail filed a Supplemental Motion for Mistrial Based on Juror Misconduct which was supported with a new affidavit of Ms. Spiers and an affidavit from another juror, Ross Rhoades.  *Id.* at PageID 288, et seq.

McGail was sentenced on October 9, 2014.  *Id.* at PageID 329-30.  He appealed to the Second District Court of Appeals raising seven assignments of error, including as Assignment Two that he was "denied his right to a fair trial as a result [of] juror misconduct and the trial court erred in denying Appellant's Motions for Mistrial on that basis."  (Appellant's Brief, State Court Record, ECF No. 11, PageID 385.)  The Second District sustained the Fourth Assignment

---

[1] Petitioner's Memorandum in Support of the Petition spends considerable time arguing that McGail is innocent of the crime, reiterating the theory he offered at trial (ECF No. 3, PageID 19-23.  McGail's guilt or innocence is not before this Court for decision.

and required the trial court to merge the aggravated robbery and murder convictions under Ohio's allied offense statute, Revised Code § 2941.25, but otherwise affirmed the conviction. *State v. McGail*, 2015-Ohio-5384, 55 N.E. 3d 513, 2015 Ohio App. LEXIS 5394 (2nd Dist. Dec. 22, 2015). McGail appealed to the Ohio Supreme Court raising the following proposition of law:

> Ohio Evidence Rule 606(B)'s requirement of *aliunde* evidence to impeach a jury verdict should be found unconstitutional and, therefore, be replaced by Federal Rule of Evidence 606(b), which permits a juror to testify as to whether extraneous prejudicial information was improperly brought to the jury's attention.

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 11, PageID 535.) The Ohio Supreme Court, however, declined jurisdiction. *State v. McGail*, 145 Ohio St. 3d 1460 (2016). On July 27, 2017, McGail filed the instant habeas corpus Petition.

# The State Court Decision and the Positions of the Parties

The opinion of the Second District on the juror misconduct claim is the last reasoned state court decision on the matter and therefore the state court decision this Court must consider. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Judge Hall wrote for the Second District as follows:

> [*22] In his second assignment of error, McGail raises a claim of juror misconduct in a motion for a mistrial, filed two weeks after the verdicts, supported by an affidavit of juror Kylie Spiers. To place this issue in context, additional trial facts are necessary. McGail's witnesses included his sister, Autumn Kunkle, who testified, among other things, that when she and her brother Patrick were growing up the family went to church every Sunday. Daine [sic] Mengos, the youth ministry director for St. Patrick's church, testified that she has known the McGail family since before Patrick's birth. When he was a teenager, he participated in many

3

youth ministry activities. He helped with the church festival, visited nursing-home residents, collected items for the Hope Christmas Shop, assisted at the soup kitchen, and joined the contemporary choir. He was a substitute percussionist in church on and off for two years and, in the year before her testimony, he was in the Lenten play. In addition, Mengos was permitted to identify four group pictures containing McGail in the contemporary choir, at the soup kitchen, and at two other youth-ministry activities. These exhibits were admitted as evidence. McGail's own testimony about his involvement with church was much more limited, almost negligible considering his 100 pages of testimony. He said he loved volunteering through his church. He said growing up, church and school were the most important things for the family and they went to St. Patrick's. He identified himself and his brother in Exhibit P, the photograph of the church choir. He said that he had friends at church and saw them when he was at church projects with the youth group, but outside of that, he didn't have contact with them. He said that to deal with the shame over not doing more to halt the home invasion, he goes to church to ask for forgiveness. Nowhere did he testify to current or recent regular attendance at St. Patrick's Sunday services.

[*23] At several intervals throughout the trial, the court indicated that jurors were not to read or listen to media reports, including reference that such reports often are incomplete and inaccurate. The court also indicated several times, including in final instructions, that the jurors must decide the case for themselves and may only consider and decide the case on the evidence presented. Finally, we note that there was no inquiry during voir dire about whether any prospective juror might recognize the McGail family from their St. Patrick's church attendance, or from McGail's participation in the Civil Air Patrol, about which there was also substantial evidence, including photographs, introduced by the defense.

[*24] After the verdicts were announced in open court, the defense requested that the jury be polled. Each juror independently confirmed his or her verdict.

[*25] No evidence of published news reports was submitted in support of the new trial motion, and therefore there was no information before the court suggesting that news reports supplied inaccurate or inadmissible prejudicial information. The juror's affidavit we discuss *infra* indicates that another juror told her news reports were "slanted" against McGail, but, without question, so was the evidence as it was admitted. The affidavit asserts that the

other juror talked about a news report containing information that McGail was the shooter, but there was actual trial evidence about that contention introduced during defense questioning. The lead investigator, Detective Tilley, testified that he originally believed that Patrick McGail was the shooter. He even professed such belief during the investigation to others. But he also testified that, after receiving the results of ballistics testing, Sowers was the shooter. At trial, there was absolutely no dispute that Jason Sowers was the one who discharged the firearm that killed Nate Wintrow.

[*26] We now turn to the defense mistrial motion. The trial court considered the motion as a motion for a new trial under Crim. R. 33(A)(2), and so shall we. In the affidavit in support of the motion, in relevant part, juror Spiers averred:

3. My decision was influenced to vote "Guilty" when the jury foreman [D.W.] told the jury that he goes to St. Patrick's church the same church that Patrick McGail testified going to and that he had never seen Patrick or his family at that church, so he must be lying.

4. This information influenced me to not believe Patrick's testimony.

5. As a result of [D.W.'s] personal representation, I found Patrick McGail "Guilty."

6. Additionally, during the deliberations several of the jurors discussed how Patrick would not give police the password to search his phone.

7. I do not remember any testimony regarding Patrick not providing his password to police.

8. One of the jurors named [T.H.] admitted to me that he read the newspaper articles about this case.

9. [T.H.] discussed one of these articles to me on the final day of deliberations.

10. From [T.H.'s] discussion, these articles were slanted against Patrick McGail's innocence, including stating that Patrick was the shooter.

11. [T.H.'s] representation about what the paper stated also influenced my decision to find Patrick McGail guilty.

12. [T.H.] also brought his wife to the trial to watch; and she would converse with him during the breaks.

13. During deliberations, I asked the Jury Foreman, [D.W.] to submit a question to the judge asking what would happen if we could not reach a unanimous verdict, but he refused to submit the question.

14. If I had known that there was an option to hold out my vote I would have done so.

(Spiers affidavit accompanying Doc. #60).

Regardless of the nature of Spiers' allegations, Ohio Evid.R. 606(B) plainly precluded McGail from obtaining a new trial based on them. The rule "governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict." *State v. Schiebel*, 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990). It provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. *A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented*. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

(Emphasis added.) Evid.R. 606(B).

This requirement of outside evidence of misconduct is the aliunde rule[.]" *State v. Kirkby*, 9th Dist. Summit Nos. 27381, 27399, 2015-Ohio-1520, P 11. Aliunde evidence is other distinct or independent evidence beyond that offered by a juror himself.

*v. Gleason*, 110 Ohio App.3d 240, 245, 673 N.E.2d 985 (9th Dist.1996). As the Ohio Supreme Court explained in *Schiebel*:

> In order to permit juror testimony to impeach the verdict, a foundation of extraneous, independent evidence must first be established. This foundation must consist of information from sources other than the jurors themselves, * * * and the information must be from a source which possesses firsthand knowledge of the improper conduct. One juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first. * * * Similarly, where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence aliunde.

*Schiebel* at 75-76. "The purpose of the aliunde rule is to maintain the sanctity of the jury room and the deliberations therein. *State v. Rudge*, 89 Ohio App.3d 429, 438-439, 624 N.E.2d 1069, 1075-1076 [(1993)]. The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties." *State v. Hessler*, 90 Ohio St. 3d 108, 123, 2000 Ohio 30, 734 N.E.2d 1237 (2000).

[*29] Initially, we observe that Evid. R. 606(B) contains three basic parts: (1) the rule excludes inquiry into juror thought process or related statements or the reasoning leading to a juror's conclusions, (2) the rule precludes juror testimony (or affidavit) in the absence of some outside evidence (the actual aliunde part of the rule), and (3) the rule permits juror evidence of threats, bribes, or officer-of-the-court misconduct without limitation (this third section is inapplicable here).

[*30] Applying the first part of the rule, no inquiry can be made, and no evidence may be presented, about what effect any internal information may have had on jurors' thoughts or conclusions or their verdict. In this regard, Ohio Evid.R. 606(B) is consistent with federal Evid.R. 606(b). The exclusion of any evidence of juror mental processes and the exclusion of evidence concerning the effect of any internal information on their deliberations has been approved by the Supreme Court of the United States. In *Tanner v. United States*, 483 U.S. 107, 116-34, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the Supreme Court examined the history of Rule 606(b) in upholding the exclusion of evidence offered by two jurors concerning allegations that other jurors used drugs and alcohol

during the course of the trial. The court concluded the issue was internal in nature, rather than external, and could not be the subject of inquiry pursuant to Rule 606(b). The Court explained that public policy considerations have long emphasized the necessity of shielding jury deliberations from public scrutiny.

[*31] Applying *Tanner* and Ohio Evid. R. 606(B), we are required to ignore the parts of Spiers' affidavit indicating how any information she heard may have influenced her decision-making process or her verdict. We must also ignore any suggestion of what any other juror's mental process may have been as to what that other juror was thinking in any way. That means the affidavit's information about what she thought, how her guilty verdict was influenced, what other jurors thought, or how their verdicts were influenced, or what discussions jurors had about the evidence or their deliberations is excluded. As a consequence, the only parts of the affidavit that remain after application of the first part of Evid.R. 606(B) are (1) another juror stated he goes to St. Patrick's and he had never seen Patrick or his family there, and (2) another juror told Spiers that he read newspaper articles that were slanted against McGail's innocence and that stated that McGail was the shooter.

[*32] The next step in our analysis is whether the two referenced parts of Spiers' affidavit, raising the possibility that extraneous prejudicial information was improperly brought to her attention, and that were not excluded by the first part of Evid.R. 606(B), are excluded by the second "aliunde" portion of the rule. Under Evid.R. 606(B), we conclude neither of the remaining averments should be considered in the absence of some "outside evidence," beyond her own affidavit, corroborating what she said. Although McGail has no such evidence, he argued below, and maintains on appeal, that Evid.R. 606(B) is unconstitutional as applied in this case.

[*33] This court has recognized that it "cannot use Ohio Evid. R. 606(B) to entirely avoid constitutional violations." *State v. Buelow*, 2d Dist. Clark No. 06-CA-29, 2007-Ohio-131, P 84, citing *State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, P 55, citing *Doan v. Brigano*, 237 F.3d 722, 727-729 (6th Cir.2001). In *Buelow*, this court noted that the federal Sixth Circuit Court of Appeals in *Mason v. Mitchell*, 320 F.3d 604, 636 (6th Cir.2003), also had "cited *Doan* in holding that when Ohio courts have applied Ohio Evid.R. 606(B) 'to dispose of biased jury claims,' the courts have 'violated clearly established Supreme Court precedent that recognizes the fundamental importance of a defendant's

constitutional right to a fair trial.'" *Buelow* at P 84. Nonetheless, in *Buelow* we first applied the aliunde rule to exclude a post-verdict juror's affidavit, which stated that he may have been incompetent from mental illness, because there was no evidence beyond that affidavit of the juror himself. *Id.* at P 82. We then also went on to consider the affidavit, "[a]ssuming for the sake of argument that we should apply the rule followed by the federal courts." *Id.* at P 88. Nevertheless, we ultimately concluded that inquiry into an internal jury irregularity should only apply "'in the gravest and most important cases.'" *Id.*, quoting *Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir.2003) (internal citations omitted), and Buelow's case did not qualify under that limited category. *Id.*

[*34] Furthermore, we distinguish *Doan*, as did the trial court, by the nature of the extrinsic information brought before the jury in that case. In *Doan*, a child was found dead while in the defendant's care. Doan denied that he had been able to observe bruises on the child while caring for her earlier in the evening because the household was poorly lit. A juror conducted an experiment, at home, putting lipstick on her arm to simulate a bruise and attempting to view the mark in a room with lighting similar to that described at trial. The juror later presented the results of her experiment to the jury. After verdict, the juror signed an affidavit about her actions. No evidence aliunde of the experiment was presented. In Doan's habeas corpus appeal, the Sixth Circuit Court of Appeals concluded that the juror was acting as a witness in her statements to the other jurors about the experiment. The court held that to the extent Ohio Evid.R. 606(B) excluded *any* consideration of the evidence about an out-of-court experiment that was not subject to cross examination and that might have been flawed in its methodology, the rule was unconstitutional. *Doan*, 237 F.3d at 736. Eventually, though, the *Doan* court concluded that the jury's consideration of the out-of-court experiment was harmless error. *Id.* at 739.

 [*35]  We also observe that the Sixth Circuit's *Doan* criticism of Ohio's aliunde rule seems to have been diminished by *Brown v. Bradshaw*, 531 F.3d 433 (6th Cir.2008), and citations to it. In post-conviction relief proceedings, Brown had submitted a juror's affidavit alleging that "other jurors yelled and screamed at her in the jury room, pounded the table with their fists, isolated her, accused her of holding things up, blamed her for keeping the other jurors from returning to their families, and bullied her into changing her vote." *Id.* at 436. In the appeal of Brown's subsequent habeas corpus case, the Sixth Circuit observed that the juror's evidence is inadmissible under Ohio Evid. R. 606(B) and there is

"no constitutional impediment" to enforcement of the rule. *Id.* at 438. *Accord Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir.2010) ("This court has previously held that there is no 'constitutional impediment to enforcing' Ohio's *aliunde* rule.").

[*36] Unlike Ohio's Evid.R. 606(B), which precludes a juror from testifying about extraneous prejudicial information brought to the jury's attention in the absence of other (i.e., non-juror) supporting evidence, the federal rule provides otherwise. Federal Evid.R. 606(b)(2)(A) contains an exception allowing a juror to testify about whether "extraneous prejudicial information was improperly brought to the jury's attention." Case law demonstrates that this exception is rooted in common law and in the U.S. Constitution. *See, e.g., Garcia v. Andrews*, 488 F.3d 370, 376 (6th Cir. 2007), quoting *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999) ("'When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information was on that jury.'"); *Robinson v. Polk*, 438 F.3d 350, 360 (4th Cir. 2006) (recognizing that the exception allowing evidence of an external influence on the jury's verdict embodies the Sixth Amendment's Confrontation Clause protections). As another federal circuit court has explained, "[t]he Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." (Citation omitted.) *Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2008); *see also Loliscio v. Goord*, 263 F.3d 178, 185 (2d Cir. 2001) ("[A] criminal defendant's Sixth Amendment rights are implicated when a jury considers incriminating evidence that was not admitted at trial."). "'A juror's communication of extrinsic facts implicates the Confrontation Clause.'" (Citations omitted.) *Estrada* at 1238. "'The juror in effect becomes an unsworn witness, not subject to confrontation or cross examination.'" (Citations omitted.) *Id.* "That the unsworn testimony comes from a juror does not diminish the scope of a defendant's rights under the Sixth Amendment." (Citations omitted.) *Id.* In *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir.2006), the Sixth Circuit Court of Appeals observed that a juror's allegations about *external* influences on the verdict may establish a Sixth Amendment violation, although in *Lloyd* allegations of *internal* influence (pressure from other jurors) did not require further inquiry. These Sixth Amendment concerns do not exist with respect to a juror's allegations about influences *internal* to the deliberation process. "[T]he Sixth Amendment's guarantees do not require judicial consideration of juror allegations regarding influences internal to the deliberation process." *Robinson* at 362-363, citing

*United States*, 483 U.S. 107, 127, 107 S. Ct. 2739, 97 L.Ed. 2d 90 (1987).

[*37] In McGail's case, we see no reason not to apply Ohio's aliunde rule in regard to the complaint about church attendance that, in our view, was related to internal processes of a juror in deliberations. Assuming that during deliberations a juror who was a parishioner from St. Patirck's reported that he had never seen McGail or his family at the church, we fail to see how such a comment, absent external experimentation or investigation, is sufficient to ignore the limitations of Evid.R. 606(B). Moreover, with respect to newspaper stories, assuming that a juror reported what is contained in Spiers' affidavit, without any suggestion or evidence that the reports contained information that was contrary to evidence presented in open court, we apply the aliunde rule and exclude the juror's allegation of misconduct because there is no "other evidence" to support it.

[*38] Even if we did not exclude the juror's averments about McGail's evidence of church affiliation and the references to news reports, we determine that neither issue supports a finding that the information was prejudicial to him. In *State v. Kehn*, 50 Ohio St.2d 11, 361 N.E.2d 1330 (1977), the Ohio Supreme Court stated: "It is a long standing rule of this court that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." *Id.* at 19, citing *Armleder v. Lieberman*, 33 Ohio St. 77 (1877). Indeed, it is "extraneous *prejudicial* information" that Evid.R. 606(B) addresses. Constitutional Sixth Amendment errors concerning extrinsic information before the jury are subject to a harmless-error analysis. *Mason v. Mitchell*, 320 F.3d at 638. In that evidence of the effect of extraneous information on the mind of any juror is inadmissible, a "trial court's post-verdict determination of extra-record prejudice must be an objective one," focusing on the information's probable effect on a "hypothetical average juror." *United States v. Calbas*, 821 F.2d 887, 896, fn. 9 (2d Cir.1987).

[*P39] We have already indicated that McGail's testimony about his church activities was minimal. He did not testify about current or recent church involvement. He referred to some of the same information introduced by Diane Mengos, the director of youth activities. Mengos' testimony was undisputed and was supported by photographs of McGail in the midst of various church groups, some of which were unquestionably at church facilities. In light of the evidence, no reasonable juror, or hypothetical average juror,

could believe McGail's credibility would be diminished by a parishioner who had not seen McGail or his family at the church.

[*P40] In a similar vein, as we have already indicated, there was no information before the trial court that any inaccurate, inadmissible or prejudicial information was in any news reports. We have carefully reviewed and analyzed the entire record and transcript. The evidence itself was increasingly "slanted" against McGail with each passing day. We have also noted that defense questioning revealed that the lead detective initially believed McGail was the shooter. But at trial it was undisputed that Sowers fired the one and only gunshot that killed Nate Wintrow. In light of the evidence, no reasonable juror, or hypothetical average juror, could believe that the references in Spiers' affidavit to information from news reports was anything other than what was admitted in court. Therefore, the information was not prejudicial to McGail.

[*P41] The second assignment of error is overruled.

*State v. McGail, supra.*

A habeas court must defer to a state court's decision of a constitutional issue unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). McGail acknowledges this rule, but claims the Second District's decision violates both subsections of § 2254(d)(Memo in Support, ECF No. 3, PageID 25-34). He relies principally on *Doan v. Brigano,* 237 F.3d 722 (6th Cir. 2001). He also claims that the Second District's harmless error review was contrary to or an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967). *Id*. at PageID 35-40. Finally, he claims the state courts denied his due process right to an evidentiary hearing on the juror misconduct issue, principally relying on *Nevers v. Killinger,* 169 F.3d 352 (6th Cir. 1999)*Id*. at PageID 40-41.

Without expressly using the term, the Warden argues McGail has procedurally defaulted on his claim and that the state court decision rests on an adequate and independent state ground, to wit, that McGail failed to satisfy the *aliunde* rule in presenting his juror misconduct claim. (Return of Writ, ECF No. 12.)

# Analysis

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir.

2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord*, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

In this case Ohio has a relevant rule, the so-called *aliunde* rule, which requires that a juror's live or affidavit testimony about extraneous prejudicial information that was brought to the jury's attention will be considered only "after some outside evidence of that act or event has been presented." Ohio R. Evid. 606(B). Moreover, the *aliunde* rule was enforced by the Second District in refusing to consider Juror Kylie Spiers' Affidavit on the issues of (1) jury foreperson

comment on the church practice of Petitioner and his family and (2) reports from another juror of the content of newspaper reports of the trial.

The key question for this Court, then, is whether the Ohio *aliunde* rule is an adequate and independent state ground of decision.

In *Doan v. Brigano, supra*, the Sixth Circuit was confronted with the same question. It held that a juror's presentation to fellow jurors of the results of an out-of-court experiment she conducted to test the credibility of the evidence violated the habeas petitioner's right to confront the evidence and witnesses presented against him and his right to a jury that considers only the evidence presented at trial. 237 F.3d at 724. However, the court also found Doan suffered no prejudice from the constitutional error, and denied habeas relief. *Id.*

*Doan* involved the death of a fifteen-month-old child who was in Doan's care when she died. The cause of death was determined to be "multiple bodily trauma," but Doan testified that it was too dark in the areas where he was with the child for him to see any bruising. One of the trial jurors, identified as Juror A, gave an affidavit stating she

> conducted an experiment in her own home during the trial to see if he was telling the truth. Juror A put lipstick on her arm to simulate a bruise, and attempted to view the "bruise" in a room lit similarly to the rooms that [the child,] Star[,] was in that evening. The experiment confirmed her belief that one could see bruises in such lighting, and she then told a defense team investigator that she had "informed other members of the jury of her experiment during deliberations."

237 F.3d at 727. The trial court denied a new trial on this evidence and Ohio Court of Appeals for the First District concluded that Juror A's affidavit was inadmissible under Ohio R. Evid. 606(B). *State v. Doan*, 1995 Ohio App. LEXIS 4395 (1ˢᵗ Dist. Sept. 29, 1995). The federal District Court found Rule 606(B) was an adequate and independent state ground of decision and accepted the State's procedural default defense on that basis.

The Sixth Circuit held a state ground of decision cannot be adequate if the state rule of law involved is itself unconstitutional or applied in an unconstitutional way. It concluded that allowing Ohio R. Evid. 606(B) to preclude the Ohio courts from considering Juror A's affidavit was contrary to clearly established Supreme Court precedent. 237 F.3d at 731, citing *Parker v. Gladden*, 385 U.S. 363 (1966), and *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). Judge Moore, *Doan*'s author, also discussed *Mattox v. United States,* 146 U.S. 140 (1892), which allowed juror affidavits to show extraneous matter – a bailiff's comments and a newspaper editorial – had been brought to the jury's attention. Having found the constitutional violation in *Doan*, however, the Sixth Circuit also found the error was harmless, applying the standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The Second District distinguished *Doan* on the nature of the extrinsic information presented in that Juror A in *Doan* had conducted an experiment and reported the results, whereas no experiment or investigation by the jury foreperson was alleged here.

This Magistrate Judge finds that distinction unpersuasive. In both cases, the offending jurors acted as witnesses, reporting to other jurors their observations outside the trial process. Whether a juror has conducted an experiment or merely reports his observations of outside events, he has in each instance acted as an unconfronted and uncross-examined witness. Nor do the cases make a distinction between conducting an "investigation" into the facts and reporting facts already known from prior observation.

The Second District also questioned whether *Doan* remained good law. *State v. McGail, supra*, at ¶ 35, citing *Brown v. Bradshaw*, 531 F.3d 433 (6th Cir. 2008) and *Hoffner v. Bradshaw,* 622 F.3d 487 (6th Cir. 2010). In *Brown*, the Sixth Circuit upheld denial of habeas relief in a capital case. It declined Brown's request for discovery and an evidentiary hearing "on the issue

of jury coercion [because they] . . . would be futile because such evidence is inadmissible under Ohio law, Ohio R. Evid. 606(B), and Brown has not "established any constitutional impediment to enforcing this state evidentiary rule." 531 F.3d at 438. *Brown* does not discuss *Doan* and did not involve any extrinsic matter being presented to the jury. Rather the issue was pressure by other jurors on the dissenting juror to change her vote.

*Hoffner* was also a capital case where the juror affidavit excluded under Ohio R. Evid. 606(B) was about the effect of Hoffner's flat affect (kept flat on counsel's instructions) on her determination to vote for conviction. *Doan* is cited only for its discussion of the differences between Ohio R. Evid. 606(B) and Fed. R. Evid. 606(b). There is no suggestion *Doan* is no longer good law. Moreover, the excluded affidavit was not at all about extrinsic matter coming before the jury. *Hoffner* cites *Brown* for the proposition, quoted by the Second District, that "[t]his court has previously held that there is no constitutional impediment to enforcing Ohio's aliunde rule." What the *Brown* court actually held, in contrast, was that Brown had not established any such impediment.

The Second District also cited *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003). There the Sixth Circuit, applying *Doan*, found constitutional error in a juror's conducting and reporting an out-of-court experiment, but upheld the state court's factual finding that the report did not influence the verdict and its conclusion that the error was harmless.

In his statement of the standard of review, presumably in response to Petitioner's reliance on *Doan*, the Warden reminds the Court that it "may not rely on federal circuit court decisions . . . in determining 'clearly established federal law.'" (Return, ECF No. 12, PageID 2218, citing *Renico v. Lett*, 449 U.S. 755 (2010).) That is certainly correct. A state court decision can be set aside only if it is contrary to, or an unreasonable application of, a holding of the United States

Supreme Court. However, circuit precedent controls this Court on the question of what is clearly established Supreme Court precedent.

> While the § 2254 inquiry looks to the clearly established law announced by the Supreme Court, our court's published holdings identifying the content of clearly established Supreme Court law for § 2254 purposes are binding on future panels. *See Renico v. Lett,* 559 U.S. 766, 778–79, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010); *Coles v. Smith,* 577 Fed.Appx. 502, 507–08 (6th Cir.2014) (discussing the impact of *Renico* )*; Smith v. Stegall,* 385 F.3d 993, 998 (6th Cir.2004) (discussing the ways in which Sixth Circuit panels may bind later panels in habeas cases).

*Cutts v. Smith,* 630 F. App'x 505, 508 (6th Cir. 2015). Decisional law binding on future panels of the circuit court is obviously also binding on the district courts.

In *Doan*, the Sixth Circuit found the state court's reliance on the *aliunde* rule violated clearly established Supreme Court precedent and we are bound by that determination in the absence of an *en banc* Sixth Circuit decision overruling *Doan* or an intervening Supreme Court decision. *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th Cir. 2001); *Salmi v. Secretary of HHS*, 774 F.2d 685, 689 (6th Cir. 1985); *accord* 6th Cir. R. 206(c).

The Magistrate Judge concludes the Second District's decision is an objectively unreasonable application of the Supreme Court case law relied on in *Doan* as clearly established, to wit, *Parker v. Gladden*, 385 U.S. 363 (1966), and *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). The relevant rule derived from those cases is that a person may not be convicted on evidence not presented at trial or which the defendant had not had an opportunity to confront. The Second District itself cites a number of cases from the federal circuits recognizing that rule as well established. *Robinson v. Polk*, 438 F.3d 350, 360 (4th Cir. 2006); *Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2008); *see also Loliscio v. Goord*, 263 F.3d 178, 185 (2nd ir. 2001),

all cited in *State v. McGail, supra,* at ¶ 36.

As the Warden points out, the Second District applied the first part of Ohio R. Evid. 606(B) to exclude "the affidavit's information about what [Spiers] thought, how her guilty verdict was influenced, what other jurors thought, or how their verdicts were influenced, or what discussions jurors had about the evidence or their deliberations." (Return, ECF No. 12, PageID 2222, citing *McGail, supra,* at ¶ 31. The Petitioner does not challenge this ruling and the Magistrate Judge, independently of that, finds it is consistent with the Constitution.

The Second District applied the *aliunde* rule to exclude two other items from the Spiers' Affidavit: the church attendance statements of the jury foreperson and the report about newspaper stories. *McGail, supra,* at ¶ 37. The church attendance matter was found to be "related to internal processes of a juror in deliberations." The Magistrate Judge finds this conclusion to be an unreasonable determination of the facts in light of the evidence presented. The issue is not whether the jury foreperson believed McGail was lying about his church attendance and allowed that to affect his verdict. If at some time after verdict the jury foreperson had told some third party that he never saw the McGail family at church and this had affect his thinking, that would be constitutionally excludable. But the jury foreperson did not keep what he had observed to himself but published it to the other jurors.

The finding about the newspaper reports, on the other hand, requires deference. Here the Second District found there was no proof offered that the newspaper stories "contained information that was contrary to evidence presented in open court." *Id.* None of the newspaper reports about the trial was attached to the motions for new trial when plainly they would have been available to McGail, on whom the burden of impeaching the verdict rested.

The Warden contends that the distinction between what is internal to jury deliberations

and what is external is itself not "clearly established" by Supreme Court precedent or even that of the district and circuit courts (Return, ECF No. 12, PageID 2232-39, citing particularly *Thompson v. Parker*, 867 F.3d 641 (6th Cir. 2017)). Judge Boggs' opinion in that case is worth quoting at some length. Having noted our constitutional tradition that jurors must be impartial, he continues:

> But impartiality and indifference do not require ignorance. Because "jurors will have opinions from their life experiences, it would be impractical for the Sixth Amendment to require that each juror's mind be a tabula rasa." *United States v. Jones*, 716 F.3d 851, 857 (4th Cir. 2013). Indeed, it would not only be impractical but also undesirable: for jurors to evaluate the evidence before them and do their job intelligently, they must take into account rather than ignore what general knowledge they may have gained from their life experiences.
>
>> So far from laying aside their own general knowledge and ideas, the jury should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinions expressed; and it was only in that way that they could arrive at a just conclusion. While they cannot act in any case upon *particular facts material to its disposition resting in their private knowledge*, but should be governed by the evidence adduced, they may, and *to act intelligently they must*, judge of the weight and force of that evidence *by their own general knowledge* of the subject of inquiry.
>
> *Head v. Hargrave*, 105 U.S. 45, 49, 26 L. Ed. 1028 (1881) (emphases added).
>
> There is thus a bright line, and rightly so, between, on the one hand, jurors' taking into account "their own wisdom, experience, and common sense," *Doan v. Brigano*, 237 F.3d 722, 734 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), when evaluating the evidence admitted at trial, and, on the other hand, jurors' employing extraneous evidence such as news reports *of the case being decided by the jurors, e.g., Nevers v. Killinger*, 169 F.3d 352, 366 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir. 2000); or physical news

items being brought into the jury room, *e.g., Wiley v. State*, 169 Tex. Crim. 256, 332 S.W.2d 725, 726 (Tex. Crim. App. 1960) (reversing death sentence where one juror brought in a local newspaper clipping containing a recent news story, which the foreman read aloud to the jury and which began: "Tom Ainsworth, 40, convicted murderer from Cut'n Shoot, celebrated the end of his parole Thursday night by buying a jug of gin and then killing a man"); *Waldorf v. Shuta*, 3 F.3d 705, 710-11 (3d Cir. 1993) (jurors were "reading, commenting [on,] and circulating" a highly prejudicial New York Post article in the jury room).

Thompson relies principally on *Nevers* and on various decisions of our sister circuits such as *Waldorf*. But none of Thompson's cited authorities support the proposition that merely *discussing* a news story about *another case* that one or some of the jurors *might have read or seen or heard about* is analogous either to seeing extraneous reports *about the case the jurors are deciding* or to having physical news items such as newspaper clippings either provided to jurors or brought into the jury room by jurors.

The jury's sole task in this case was to set Thompson's punishment. Its options were to impose a term of imprisonment for a number of years no less than twenty, a life sentence with the possibility of parole, or a death sentence. Surely, the jury's deliberations would naturally include discussing such considerations as the likelihood that Thompson, if released even at an old age, would kill again. And in the context of such deliberations, the jurors' general knowledge about recidivism, even if it includes recollections of unrelated news coverage of other crimes, is fair game for discussion.

To hold otherwise would have curious (and undesirable) implications about the sort of "evidence" that might be considered extraneous. What if, for example, a juror were an actuary who had general knowledge of the life expectancy of someone similarly situated to the defendant: would that juror's discussion of the defendant's odds of reoffending be "extraneous evidence" and thus violate the defendant's constitutional rights? Or, what if the jurors in this case, instead of discussing a news story, had discussed a story that had been related in a novel? Would all general knowledge gleaned from reading books be considered "extraneous evidence"? Or only from reading nonfiction books?

It therefore makes sense that, at a minimum, to be considered extraneous evidence, the evidence must either relate to the case that the jurors are deciding or be physically brought to the jury

room or disseminated to the jury. *Cf. Warger v. Shauers*, 135 S. Ct. 521, 529, 190 L. Ed. 2d 422 (2014) (holding, in a civil case, that "'[e]xternal' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room").

867 F.3d at 647-49.[2]  *Thompson v. Parker* thus not only reinforces the distinction between internal and external used in this Report, but cites the Supreme Court holding in *Warger* to the same effect.  What the jury foreperson had to say about McGail family church attendance was related to the specific case being decided and was information not within the general knowledge of jurors.  He did not, for example, opine that church attendance in his general experience did not imply truth telling.  Nor was what he related part of the general body of experiences of jurors.

More recent Supreme Court guidance comes *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 197 L.Ed. 2d 107 (2017).  The Colorado Supreme Court had relied on that State's version of Evidence Rule 606(b) to prohibit testimony about ethnically biased comments during deliberations about Mexican men.  *Colorado v. Pena Rodriquez*, 350 P. 3d 287 (Colo. Sup. Ct. 2015).  The United States Supreme Court held "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee."  *Id.* at 869.  *Pena-Rodriquez* is not directly in point because it was grounded on the need to purge the administration of justice of racial prejudice.  Nonetheless, it underlines the need to evaluate rules on juror competence to impeach a verdict against other constitutional standards.

In sum, the Magistrate Judge concludes the Second District's decision is not entitled to

---

[2] Judge Boggs' views on juror impartiality and general knowledge are consistent with what he has written on judicial impartiality and general knowledge.  *United States v. Bonds*, 18 F 3d 1327 (6th Cir. 1994).

deference under 28 U.S.C. § 2254(d) because the application of the *aliunde* rule here violates clearly established Supreme Court precedent.

**Harmless Error**

The Second District also concluded that, if there was a constitutional violation here, it was not prejudicial. *State v. McGail*, *supra*, at ¶¶ 38-40. Under 28 U.S.C. § 2254(d)(2), this was a decision based on an unreasonable determination of the facts in light of the evidence presented. The Second District downplayed the impact of the jury foreman's testimony about McGail church involvement by indicating McGail himself said little about it and what he said was corroborated by his sister and the church youth minister. The Magistrate Judge believes this misses the intended impact of all the church attendance evidence taken together.

McGail's credibility was the central issue of the defense. There was no doubt that Wintrow had been shot dead as part of the home invasion. McGail himself took the stand to deny being there at the time the murder took place and gave the jury several elaborate explanations about how his knife was found at the scene, how he received the scrapes and cuts he suffered, and his appearance at his girlfriend's house shortly after the invasion. Obviously his credibility about these statements was crucial to the defense.

The obvious purpose of all the church involvement testimony was to build up McGail's character: a young man who was involved in all this church work (albeit earlier in his life) wouldn't lie about his involvement in such a serious crime, would he? Hence not only the oral testimony from the sister and the youth minister, but the corroborative photographs of McGail in

church groups.

The danger of inference from religiosity to credibility is emphasized by both Ohio R. Evid. 610 and Fed. R. Evid. 610, both of which forbid evidence of a witness's religious opinions or beliefs to support the witness's credibility. The Magistrate Judge assumes evidence of involvement in church activities is not evidence of religious belief and therefore what was presented was not excludable under Rule 610, but the purpose of presenting it was clearly to show McGail was a a good boy.[3] In any event, extensive testimony bolstering McGail's credibility was offered from his sister, Autumn Kunkle (Tr. Tr. ECF No. 11, PageID 1765-81), his Civil Air Patrol Commander Seth Nottingham (*id.* at PageID 1817-34), and youth minister Diane Mengos (*id.* at PageID 1908-21). McGail's credibility was of course an issue because he testified, but a major focus of the defense case was presenting evidence of his good character. McGail himself testified he was presently going to church to seek forgiveness for not having stopped the home invasion, *id.* at PageID 1996.

The issue is not what testimony about McGail's church involvement is true or false. The issue is the centrality of his character evidence to his defense and the fact that he built that character evidence in large part around testimony about church involvement, testimony the prosecutor left untouched. If the prosecutor had presented contrary evidence like that given by the jury foreman – e.g., the McGail family is not actively involved in church – McGail could have confronted it with cross-examination or rebutting evidence. But because McGail did not know of the jury foreman's unsworn statement about his church observations, he could do nothing about it. Contrary to the Second District's implication, McGail's church attendance was important to bolstering his credibility and that was the central issue as trial.

On the issue of harmless error, McGail is cites the wrong standard – the State is not

---

[3] McGail was eighteen at the time of trial.

required to show harmlessness beyond a reasonable doubt as previously required under *Chapman v. California, supra*. Instead, the proper standard is provided by *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting the standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). A federal court may grant habeas relief only if a constitutional violation had a substantial and injurious effect or influence in determining the jury's verdict. *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir. 2014), *cert. denied*, 135 S.Ct. 876 (2014).

When the habeas court is in grave doubt whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the verdict, the error is not harmless and the writ must be granted. *O'Neal v. McAninch*, 513 U.S. 432 (1995). The Magistrate Judge is in grave doubt about harmlessness since the inappropriate evidence attacked a central point of McGail's defense, his general credibility.

The Warden notes that juror misconduct must be judged against its impact on a reasonable or hypothetical juror and Juror Spiers may or may not have been such a juror. But there is no basis in the record for concluding her reaction was somehow idiosyncratic. If it were shown, for example, that she was a devout Catholic and had some particular sensibility over this type of evidence, that would be a different case. It is a commonplace of American culture that religious hypocrites (of whatever denomination) suffer serious negative judgment.[4] The average juror, upon learning that evidence of church activity was manufactured or exaggerated, would be likely to disbelieve not just the character evidence given in trial, but the whole case it was given to support.

**Evidentiary Hearing**

---

[4] The popularity of Sinclair Lewis's *Elmer Gantry*, published in 1927, and the public reaction to the clerical sexual abuse crisis in the American Catholic Church, first widely publicized in 2002, show the prevalence of this customary reaction to perceived religious hypocrisy over an extended period of time.

McGail also argues he was constitutionally entitled to a hearing in the state court on his claim of juror misconduct, relying on *Nevers v. Killinger*, 169 F.3d 352 (6th Cir. 1999). Although *Nevers* is circuit rather than Supreme Court precedent, the *Nevers* court held:

> When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury. In *Smith v. Phillips*, 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982), the Supreme Court made it clear that, while no court has the ability to shield jurors from every outside contact or influence that might affect their votes, nonetheless, the trial court has a duty to take steps to ensure that the jury votes solely on the basis of the evidence presented at trial. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*. at 217. The Court went on to hold that a post-trial hearing is sufficient to decide juror partiality in both the state and federal courts, and that in a federal habeas proceeding, the factual finding made by the state trial court in such a hearing is entitled to the presumption of correctness. *Id*. at 218.

169 F.3d at 373. In *Smith* the Supreme Court thus established the right to have the trial court inquire into occasions when extra-record matter is presented to a jury, although it also established that post-trial inquiry is constitutionally sufficient and facts found in such a hearing are entitled to a presumption of correctness.

In this case no such hearing was held because Judge Gee applied the *aliunde* rule (Order Denying Motion for Mistrial, State Court Record, ECF No. 11, PageID 269-73), and the Second District affirmed on that basis. Per *Doan*, application of the Ohio *aliunde* rule to avoid such a hearing means the state court decisions are not based on an adequate and independent state ground of decision and cannot stand.

**Conclusion**

Denial of an evidentiary hearing into the questions of what the jury foreperson said about McGail family church attendance and its impact on the jury denied McGail's right to due process under the Fourteenth Amendment and, depending on the results of such a hearing, may have denied his rights under the Confrontation Clause and a to a jury verdict based only on evidence presented at trial. Based on the foregoing analysis, it is respectfully recommended that this Court grant a conditional writ of habeas corpus requiring that Petitioner be discharged from custody unless he is given a prompt evidentiary hearing in the Miami County Common Pleas Court on his claim of juror misconduct and the result of that hearing is consistent with continuing to sustain the jury verdict.

February 20, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).