# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PATRICK McGAIL,

              Petitioner,        :        Case No. 3:17-cv-251

    - vs -                           District Judge Walter Herbert Rice
                                            Magistrate Judge Michael R. Merz

JEFFREY B. NOBLE, Warden,
  London Correctional Institution,

                                :

              Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus action is before the Court on Objections by the Respondent (ECF No. 17) and the Petitioner (ECF No. 19) to the Magistrate Judge's Report and Recommendations (ECF No. 16). Petitioner has timely responded to the Warden's Objections (Response, ECF No. 20). District Judge Rice has recommitted the case for reconsideration in light of the Objections (ECF No. 18).

McGail pleaded only one ground for habeas corpus relief, to wit, that he was deprived of his Sixth Amendment rights to an impartial jury and to confront evidence against him due to juror misconduct and the subsequent application of the *aliunde* rule (Petition, ECF No. 1, PageID 5). To reach the conclusion that a conditional writ should be issued, the Magistrate Judge concluded (1) that the Second District Court of Appeals' reliance on the *aliunde* portion of Ohio R. Evid. 606(B) was an objectively unreasonable application of clearly established Supreme Court precedent, (2) that court's decision that any error was harmless was based on an unreasonable determination of the facts from the evidence of record, and (3) the refusal to hold

an evidentiary hearing on the juror misconduct claim deprived Petitioner of due process (Report, ECF No. 16).

**Respondent's Objections**

**Adequate and Independent State Ground of Decision?**

The Warden first disclaims any reliance on a procedural default defense, noting that no such defense was pleaded in the Return (Objections, ECF No. 17, PageID 2280-81). The Report noted that the Warden had not expressly used the term "procedural default," but also that the Warden's defense was that the Second District's decision rested on an adequate and independent state procedural ground, to wit, that McGail was not entitled to a mistrial on the juror misconduct issue because he had not presented *aliunde* evidence of that misconduct. The Report's analysis focused first on whether the *aliunde* rule was an adequate state ground of decision: "The key question for this Court, then, is whether the Ohio *aliunde* rule is an adequate and independent state ground of decision." (Report, ECF No. 16, PageID 2266.)

The Warden asserts that the key question instead is whether the Second District's "considered assessment of the [*aliunde*] rule's constitutional ramifications" was reasonable (Objections, ECF No. 17, PageID 2281). McGail's Second Assignment of Error on appeal was that he was denied a fair trial and should have been given a new trial because of juror misconduct. *State v. McGail*, 2015-Ohio-5384, 55 N.E. 3d 513, 2015 Ohio App. LEXIS 5394, ¶ 22 (2nd Dist. Dec. 22, 2015). The court then squarely held it could not reach the merits of that claim: "Regardless of the nature of [Juror] Spiers' allegations, Ohio Evid. R. 606(B) plainly

precluded McGail from obtaining a new trial based on them." *Id.* at ¶ 28. In other words, it held McGail had failed to comply with a state procedural rule, Ohio Evid. R. 606(B), in attempting to prove his juror misconduct claim. That ruling is made more explicit in ¶ 32:

> Under Evid.R. 606(B), we conclude neither of the remaining averments should be considered in the absence of some "outside evidence," beyond her [Juror Spiers'] own affidavit, corroborating what she said. Although McGail has no such evidence, he argued below, and maintains on appeal, that Evid.R. 606(B) is unconstitutional as applied in this case.

*Id.*

The adequacy of a state procedural bar is itself a federal question. *Cone v. Bell,* 556 U.S. 449 (2009), *citing Lee v. Kemna*, 534 U.S. 362, 375 (2002); see also *Coleman v. Thompson*, 501 U.S. 722, 736 (1991). The adequacy of the state ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), *citing Henry v. Mississippi,* 379 U.S. 443, 446-48 (1965). Here binding circuit precedent, *Doan v. Brigano,* 237 F.3d 722 (6th Cir. 2001), holds that the federal interest in deciding whether a jury has been exposed to improper matter outside the trial record outweighs the state interest in enforcing the *aliunde* rule.

McGail plainly claimed in the Second District that the Ohio *aliunde* rule unconstitutionally prevented his getting a decision on the merits of his underlying juror misconduct claim. Assuming that was a "claim" within the meaning of 28 U.S.C. § 2254(d)(1),[1] the Magistrate Judge continues to conclude the Second District's decision of that claim was an objectively unreasonable application of the Supreme Court precedent cited in *Doan*, *supra*.

---

[1] It could be argued that "claim" in § 2254(d)(1) means a claim of entitlement to habeas relief, rather than a subordinate constitutional claim such as the one the Second District decided here, to wit, that the *aliunde* rule is not unconstitutional. Since the Second District did not reach the merits of McGail's juror misconduct claim, its decision is arguably not a decision on the merits of a claim entitled to deference under § 2254(d)(1) but instead would just be a state court decision on a question of federal law to be reviewed de novo. Because Petitioner's case meets the higher standard, the distinction is not material.

3

**Harmless Error?**

The Warden spends the bulk of his Objections arguing that the jury's exposure to the foreman's statements about McGail's church attendance was harmless (Objections, ECF No. 17, PageID 2281-88).

The Warden agrees with the Magistrate Judge that the correct standard for measuring harmless error is stated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and if the reviewing court is in doubt, the error is not harmless, per *O'Neil v. McAninch*, 513 U.S. 432 (1995).

As to the depth of review, the Warden argues the Court must "review[] the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." (Objections, ECF No. 17, citing United States v. Weiss, 752 F.2d 777, 783 (2nd Cir. 1985).) Performing that review, the Magistrate Judge notes that McGail's trial occurred over seven days in August 2014. The trial transcript occupies 1506 pages. Voir dire consumed the first three hundred pages of the transcript and the first day of trial, indicating counsel and the court took great care with jury selection. Presentation of the State's case consumed 695 pages of transcript (Trial Transcript, ECF No. 11-3, et seq., PageID 1049-1744).

The defense began by calling McGail's sister, Autumn Kunkle, who was asked about McGail's interaction with her two daughters. The first defense exhibit was a photograph of McGail with his nine-year-old niece at a football game at which she was a cheerleader. *Id.* at PageID 1767. Then there was testimony about the family growing up and travel to Germany, France, Portugal, and Spain (with pictures). Ms. Kunkle testifies that her brother "is quiet; it takes him a long time to open up, but once he does, he's a sweetheart. He'd give you the shirt

off . . . of his back if he thought it would help you." *Id.* at PageID 1774. She testifies about his hobbies and involvement with the Civil Air Patrol. *Id.* at PageID 1775-77. She describes his current college education and how he wants to become an English professor. *Id.* at PageID 1777. She concludes he has recently been abstaining from chocolate after reading a report about slave labor used to make it. *Id.* She describes the knife he carries as a tool that came from his grandfather who was dead and "we didn't get a lot of things from him." *Id.* at PageID 1778. Then she identifies a picture of Patrick with his grandfather. Permitted to testify about where she saw him in ten years, she answered,

> I could see my Pa – my brother, Patrick, doing a lot of things. He could be the youngest to the top of Denali. He could be an English professor, he could – he could do so much with his life, have a family of his own. He just has a lot that he could do with his life. (Cries) I love him. He has a lot to offer this world.

*Id.* at PageID 1781. The only question on cross-examination was whether she was with him at the time of the crime. *Id.*

The next defense witness was Carrie Shelton, the mother of Jessica Shelton who was McGail's girlfriend at the time of the crime. She testified that McGail treated her daughter "like a queen . . . very attentive to her." *Id.* at PageID 1784. After that, the defense called McGail's Civil Air Patrol captain who testified about how diligent McGail was in this volunteer auxiliary of the United States Air Force, including receiving the General Billy Mitchell and Amelia Earhart awards. *Id.* at PageID 1818-20 (complete with pictures). He was permitted to testify that when he first heard McGail had been charged, he thought it had to be a mistake. *Id.* at PageID 1826.

The defense next called Leah Bornhorst who lived in the other half of the double where the shooting occurred and occasionally bought marijuana from the victim. She did not testify

5

about McGail's character, but supported the defense theory that Rick Terrell was the organizer of the home invasion. *Id.* at PageID 1838-76. Next the defense called attorney Ralph Bauer and qualified him as an expert in criminal plea negotiation. *Id*. at PageID 1877-89. Jessica Lowe who is the mother of Jason Sowers who was also involved in the crime was not asked character questions. *Id.* at PageID 1889-1908.

The next defense witness was Diane Mengos, the youth minister from McGail's church. She had known McGail from his birth, nineteen years before. She testified he worked hard in school, he was in the Boy Scouts, and he participated in a "ton of service activities" at St. Patrick Church, including visiting the home bound, working for the St. Vincent DePaul Society, and playing in the church choir. *Id.* at PageID 1908-1915. She then identified photographs of McGail engaged in church activities. *Id.* She testified he was goal oriented and corroborated his Civil Air Patrol involvement and helping people through the church. *Id.* at PageID 1919. She was not cross-examined at all. *Id.* at PageID 1921.

Then McGail himself took the stand. He testified about his involvement with the Boy Scouts and the Civil Air Patrol. *Id.* at PageID 1925. He testified about the previously identified pictures of himself receiving the Billy Mitchell and Amelia Earhart awards. *Id.* at PageID 1931. He testified that growing up, church and school were most important to him and identified his church as St. Patrick's in Troy. *Id.* at PageID 1933-34. Pictures of him with his nieces were introduced. *Id.* at PageID 1937-38.

McGail's testimony then turned to explaining his relationship with others who were involved and the events of the evening of the shooting, including explaining how his grandfather's knife was at the scene and denying that he had confessed his involvement to his girlfriend. He characterized his girlfriend as willing to lie, but admitted she told the truth when

6

she testified she cleaned his knife wound that night. *Id*. at PageID 1981-82. When asked if he was feeling any guilt, he testified he was going to church to ask for forgiveness because he hadn't done enough to stop the crime. *Id.* at PageID 1996. On cross-examination he testified that Jessica Shelton, Jason Sowers, and Brendon Terrel had lied under oath at trial. *Id.* at PageID 2018.

Thus the entire defense rested on McGail's credibility. The jury was given generous doses of his Boy Scouts, Civil Air Patrol, and church involvement, along with general testimonials about his good character. He needed his character bolstered because he needed the jury to believe his explanations of the physical evidence but also his characterization of Shelton, Sowers, and Terrel as liars. (Sowers and Terrell were part of the group who committed the crime and so could be portrayed as shifting the blame. But Jessica Shelton was not part of that group and had actually cleaned McGail's wounds the night of the crime.)

The Warden in his Objections asserts McGail's credibility was not central to the defense, but bases this conclusion not on a review of the evidence presented, but on a review of the closing argument (Objections, ECF No. 17, PageID 2283). The Warden's characterization of that argument is completely fair, but the argument is not evidence and is only a small part of the "entire record" which the Warden argues this Court must review.

The Warden next argues no reasonable juror would have taken the foreman's comment to mean McGail was lying about his church activities, noting the prosecutor left testimony of McGail's involvement at St Patrick's uncross-examined. (Objections, ECF No. 17, PageID 2284-85.) Certainly the jury foreman meant his comment to be understood that way, because the Spiers' Affidavit expressly says the foreman drew that inference for his fellow jurors: "he goes to St. Patrick's church the same church that Patrick McGail testified going to and that he had

7

never seen Patrick or his family at that church, so he must be lying." (Quoted at Report, ECF No. 16, PageID 2256, from *State v. McGail*, 2015-Ohio-5384, ¶ 26, 55 N.E.3d 513, 2015 Ohio App. LEXIS 5394 (2nd Dist. Dec. 22, 2015).)

The Warden argues the foreman's comment did not contradict the testimony for a number of reasons. First, he says, "churches often have masses at different times and the foreman's family and the McGail family may not have attended services at the same time." (Objections, ECF No. 17, PageID 2286). At present, St. Patrick's has three Sunday Masses and a Saturday afternoon Mass.[2] If the foreperson's observation had been made from the witness stand, then McGail,'s attorney could have cross-examined with precisely this point. The fact that the observation was made to the jury without the possibility of confrontation or cross-examination is exactly why it denied McGail his constitutional right.

The Warden emphasizes the Second District's finding that no reasonable or hypothetical average juror would have believed the foreperson's comment diminished McGail's credibility, in light of the evidence of his church involvement, which the Warden calls "overwhelming" at one point and "strong" at another (Objections, ECF No. 17, PageID 2286-87). The Magistrate Judge believes this undervalues the importance of the comment. It is not about church attendance in general, but about McGail's involvement at this particular church. The foreperson purports to have "inside" information about what happens at St. Patrick's. And the Warden makes no response to the argument in the Report about strong American reaction to religious hypocrisy.

**Evidentiary Hearing**

---

[2] www.stpattroy.org (visited March 21, 2018). The Saturday evening Mass, referred to as a "Sunday obligation Mass," is relevant because in Catholic discipline attendance at that Mass satisfies the obligation to assist at Mass on a Sunday.

The Warden also objects to the Magistrate Judge's conclusion that McGail was constitutionally entitled to an evidentiary hearing on his claim of juror misconduct (Report, ECF No. 16, PageID 2276-77). The Warden's argument is that such a hearing is only required if there is a "reasonable potential for jury taint" (Objections, ECF No. 17, PageID 2288).

The Warden emphasizes that Common Pleas Judge Gee, the trial judge, "concluded that a juror's personal recollection that he did not see McGail at church . . . was insufficiently grave to justify an inquiry into jury deliberations . . . ." But, as the Report noted, Judge Gee reached that conclusion without considering the Spiers' Affidavit because he held consideration was barred by the *aliunde* rule. (Order Denying Motion for Mistrial, State Court Record, ECF No. 11, PageID 269-73), and the Second District affirmed on that basis. *State v. McGail, supra*, at ¶ 37.

The Warden criticizes the Report for concluding "[p]er *Doan*, application of the Ohio *aliunde* rule to avoid such a hearing means the state court decisions are not based on an adequate and independent state ground of decision and cannot stand." (Report, ECF No. 16, PageID 2277). In response the Warden asserts that he "has never claimed that the *aliunde* rule is an adequate and independent state law ground which forecloses review of McGail's habeas claims, including his claim for an evidentiary hearing." (Objections, ECF No. 17, PageID 2289-90.)

In fact, the Warden goes so far as to argue that the "*aliunde* rule is not a procedural rule, but rather an evidentiary rule." *Id.* This Court is not aware that any such distinction has been made in federal habeas law. Ohio Evid. R. 606(B) deals with procedure, governing when a juror is competent to testify.

The point is not that Ohio's *aliunde* rule precludes this Court from reaching the merits of the juror misconduct claim, but rather that the Ohio courts found the *aliunde* rule barred them from reaching the merits.

Judge Gee's first decision denying a mistrial is entirely devoted to discussing the *aliunde* rule

9

and concludes:

> The motion for a mistrial, which the court has construed as a motion for a new trial under Criminal Rule 33, fails to contain any firsthand information of juror misconduct other than from a juror. Absent a foundation of extraneous, independent evidence of juror misconduct, the court cannot consider the affidavit of a member of the jury. The court also finds that there is no reason to have a hearing regarding alleged juror misconduct. The motion for a mistrial is denied.

(Order, State Court Record, ECF No. 11, Ex. 9, PageID 273.) On reconsideration, Judge Gee largely distinguished the case law relied on by McGail and again concluded the *aliunde* rule precluded relief. *Id.* at Ex. 12, PageID 284-87.

The Second District affirmed, expressly holding that "[r]egardless of the nature of Spiers' allegations, Ohio Evid.R. 606(B) plainly precluded McGail from obtaining a new trial based on them. The rule 'governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict.'" *State v. McGail,* 2015-Ohio-5384, at ¶ 27. "Under Evid.R. 606(B), we conclude neither of the remaining averments should be considered in the absence of some 'outside evidence,' beyond [Juror Spiers'] own affidavit, corroborating what she said." *Id.* at ¶ 32. "In McGail's case, we see no reason not to apply Ohio's *aliunde* rule in regard to the complaint about church attendance . . . ." *Id.* at ¶ 37.

The Second District did offer an alternative opinion on the merits, concluding that even if the Spiers' Affidavit were not excluded, no prejudice was shown. *Id.* at ¶ 38-39. This harmlessness argument is dealt with *supra*. The Warden argues this conclusion is entitled to a "high measure of deference." (Objections, ECF No. 17, PageID 2291.) As a federal Magistrate Judge who frequently reviews Second District decisions, the undersigned agrees that they are always entitled, because of the quality of the analysis, to a high measure of deference. But that does not imply always deferring and in this case deference is not warranted.

Additionally, by recommending a conditional writ to require an evidentiary hearing in the

Common Pleas Court, with review by the Second District, the Court will be deferring to state court process and giving the State of Ohio an opportunity to develop a complete record for evaluation of the juror misconduct claim.

**Conclusion**

Having reviewed the case in light of the Warden's Objections, the Magistrate Judge adheres to his prior recommendation in the case.

March 21, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).